Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| AUREO ENRIQUE RIVERA RIVERA; MYRTA NANCY VÁZQUEZ VÁZQUEZ<br><br>Parte Recurrida<br><br>v.<br><br>VENZA BRACKEN; DILLON BRACKEN; SOCIEDAD LEGAL DE GANANCIALES<br><br>Parte Peticionaria | TA2025CE00535 | *Certiorari*<br>procedente del Tribunal de Primera Instancia, Sala Superior de Aguas Buenas<br><br>Sobre: DESAHUCIO EN PRECARIO, DESAHUCIO POR INCUMPLIMIENTO<br><br>Caso Núm. AB2025CV00039 (803) |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón.

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de enero de 2026.

Comparece, la Sra. Venza Bracken, el Sr. Dillon Bracken y la Sociedad Legal de Gananciales compuesta por ambos (en adelante, "matrimonio Bracken" o "parte peticionaria") mediante el presente recurso de *certiorari*. Nos solicitan que revisemos la *Resolución Sobre Reconsideración* emitida y notificada el 25 de septiembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Aguas Buenas (en adelante, "TPI" o "tribunal de instancia"). En esencia, la *Resolución sobre Reconsideración* acogió una solicitud de determinaciones de hechos adicionales para la Sentencia de Desestimación y, declaró *No Ha Lugar* una solicitud de reconsideración sobre el pago de honorarios de abogado y costas del pleito.

Examinada la totalidad del expediente, **expedimos** el auto de *certiorari* y **desestimamos parcialmente** la Resolución recurrida. Veamos los fundamentos.

**-I-**

Del expediente en el *Sistema Unificado de Manejo y Administración de Casos* (SUMAC), surge que el **4 de marzo de 2025**, el Sr. Aureo Enrique Rivera Rivera y la Sra. Myrta Nancy Vázquez Vázquez (en adelante, "matrimonio Rivera Vázquez" o "parte recurrida") instaron una *DEMANDA JURAMENTADA* sobre desahucio contra el **matrimonio Bracken**.[1] El matrimonio **Rivera Vázquez** alegó ser dueña de la propiedad descrita como:

> ---RÚSTICA: Predio de terreno radicado en el Barrio Sonadora de Aguas Buenas, Puerto Rico, compuesta de uno punto nueve mil trescientos treinta y nueve cuerdas (1.9339 cdas.), equivalentes a SIETE MIL SEISCIENTOS PUNTO SETENTA Y DOS METROS CUADRADOS (7,600.72 M.C.) y en lindes por el Norte, con la carretera estatal número setecientos noventa y tres (793) en distancias correlativas de diez punto cero ochenta y seis (10.086) metros; catorce punto ochocientos sesenta y dos (14.862) metros, veintisiete punto seiscientos veintiséis (27.626) metros cuarenta y siete punto trescientos setenta y cinco (47.376) [sic] metros; por el Sur, en cincuenta y tres punto cuatrocientos once (53.411) metros, con Jiménez y Gándara; por el Este, en distancias correlativas de siete punto ochocientos tres (7.803) metros, veintitrés punto trescientos treinta y cinco (23.335) metros. Con Joaquín A. Castrillo y en treinta y uno punto cero cero nueve (31. 009) metros, Con Víctor Salgado; por el Oeste, en treinta y ocho punto novecientos noventa y seis (38.996) metros y sesenta y uno punto noventa (61.90) metros Con Jiménez y Gándara. -------------------------------------------------Con número de catastro: 198-025-053-23-864.-------------[2]

Además, alegaron que el **16 de febrero de 2024**, le arrendaron dicha propiedad al **matrimonio Bracken**, mediante el *"LEASE AND OPTION TO BUY AGREEMENT"* ("Contrato"), por el término de doce (12) meses —específicamente del 1 de marzo de 2024 al 28 de febrero de 2025—.[3] Dicho contrato contemplaba una extensión por un periodo de 12 meses adicionales (del 1 de marzo de 2025 al 28 de febrero de 2026), solamente si la **parte peticionaria** cumplía con ciertos requisitos.

Añadió que, a la fecha en que instó la demanda, el **matrimonio Bracken** no había pagado ni notificado de manera oportuna la extensión del Contrato. Ante esto, arguyó que la

---

[1] Entrada Núm. 1 del caso *AB2025CV00039* en SUMAC.
[2] *Íd.*
[3] Anejo 1 de la Entrada Núm. 1 del caso *AB2025CV00039* en SUMAC.

contraparte no tenía derecho de continuar ocupando la propiedad. Señaló que, a pesar de la solicitud para que la **parte peticionaria** abandonara la propiedad, estos continuaron ocupando la misma. Por lo cual, solicitó que se declarara con lugar la acción instada, y, consecuentemente, se realizara el lanzamiento del **matrimonio Bracken**. Requirió, además, el pago de las costas y honorarios de abogado.

De otro lado, el **10 de marzo de 2025**, el **matrimonio Bracken** se sometió voluntariamente a la jurisdicción mediante *MOCIÓN ASUMIENDO REPRESENTACIÓN LEGAL Y PARA INFORMAR PRESENTACIÓN DE SOLICITUD DE CONSOLIDACIÓN EN CASO CG2025CV00598*.[4] Entre otras cosas, adujo que el **27 de febrero de 2025**, instó una acción —bajo el caso **CG2025CV00598**—,[5] y que el **matrimonio Rivera Vázquez** fue emplazado el **1 de marzo de 2025**. Bajo dicha acción, reclamó los daños sufridos ante el incumplimiento de la **parte recurrida** con los términos y condiciones del contrato sobre la propiedad antes descrita.[6] Por lo cual, le solicitó al TPI que dejara sin efecto el señalamiento de juicio en su fondo en el caso **AB2025CV00039**, hasta tanto se realizara una determinación con respecto a la solicitud de consolidación.[7]

El **11 de marzo de 2025**, el **matrimonio Bracken** presentó una moción en el caso **AB2025CV00039** informando que el tribunal de instancia había concedido —en el caso **CG2025CV00598**— la consolidación de ambos casos **AB2025CV00039** y **CG2025CV00598**.[8]

---

[4] Entrada Núm. 7 del caso *AB2025CV00039* en SUMAC.
[5] Anejo 1, *Íd.*; Véase, Entrada Núm. 1 del caso *CG2025CV00598* en SUMAC.
[6] *Íd.*
[7] Anejo 2 de la Entrada Núm. 7 del caso *AB2025CV00039* en SUMAC.
[8] Entrada Núm. 10 del caso *AB2025CV00039* en SUMAC.; La *Orden* fue emitida y notificada el **11 de marzo de 2025** en la Entrada Núm. 9 del caso *CG2025CV00598* en SUMAC.

Por lo cual, el TPI emitió una *Resolución y Orden Consolidación de Caso* en el caso **AB2025CV00039**, declarando con lugar la consolidación, y dejando sin efecto el señalamiento de juicio.[9]

Tras varios incidentes procesales bajo el caso **CG2025CV00598**, referente a la acción instada en el caso **AB2025CV00039**, tomamos conocimiento judicial de estos procesos, los cuales no detallamos por no incidir en este asunto.

El **10 de abril de 2025**, el TPI celebró el *Juicio en su Fondo* para atender la solicitud de desahucio presentada por el **matrimonio Rivera Vázquez** en el caso **AB2025CV00039**.[10] En lo pertinente, de la *Minuta* surge lo siguiente:

> [S]eñaló el Tribunal que el propósito de la vista es de considerar la controversia y la causa de desahucio. Se va a circunscribir a dos controversias siendo la primera, si la parte demandante debidamente dio terminación al contrato de arrendamiento y opción de compraventa habido con la parte demandada y si la señora Bracken efectivamente dio continuidad y renovó el contrato de arrendamiento de opción de compra habido entre ellos.
> 
> [...]
> 
> Reanudados los procedimientos, se marcó la siguiente prueba con la anuencia de los representantes legales de las partes. (entrada 26 de SUMAC).
> • Exh. 1 (estip): Lease and option to buy agreement.
> • Exh. 2 (estip): Carta con fecha del 1 de noviembre de 2024.
> • Exh. 3 (estip): Correo electrónico del 20 de noviembre de 2024.
> • Exh. 4 (estip): Correo electrónico del 11 de enero de 2025.
> • Exh. 5 (estip): Carta del 22 de enero de 2025.
> 
> Por instrucciones del Tribunal, los demandantes y el señor Rivera Rivera fueron juramentados.
> 
> El licenciado Hernández indicó que se había solicitado la conversión de los procedimientos a uno ordinario.
> 
> El licenciado Chávez procedió con el directo a su representado, el señor Rivera Rivera. Este declaró que el contrato fue firmado el 16 de febrero de 2024 con término de un año. El señor Bracken ofreció un contrato de arrendamiento con opción a compra renovándolo un año adicional cuando se cumpliera su primer año. Ofreció $20,000 para sacar la propiedad del mercado de ventas el cual no es reembolsable. El canon de arrendamiento es de $3,000 mensuales hasta la terminación con opción de renovar por otro año adicional. Explicó las condiciones del contrato. Describió la propiedad en controversia. Mencionó los incumplimientos de la parte demandante con el contrato entre ellos, se incluyó el mantenimiento del terreno y de la piscina en buen estado.

---

[9] La *Resolución Interlocutoria* fue emitida el **11 de marzo de 2025** y notificada el **13 de marzo de 2025**. Véase, Entrada Núm. 12 del caso *AB2025CV00039* en SUMAC.

[10] Véase, *Minuta* de la vista celebrada el **10 de abril de 2025** notificada el **21 de abril de 2025.** Entrada Núm. 43 del caso *CG2025CV00598* en SUMAC.

A solicitud del licenciado Chávez se marcó como **Exhibit 1A (dte)** la fotografía de la piscina y como **Exhibit 1B (dte)** la fotografía de la terraza y el área de la barbacoa.

El demandante declaró que las 17 fotografías las tomó el 21 de enero de 2025 cuando visitó la propiedad para su inspección.

A solicitud del licenciado Chávez, las fotografías que obran en la identificación 15 se marcaron como Exhibit 2 (dte) en bloque. (2 A a la 2 Q).

Durante el testimonio de la parte demandada, el licenciado Hernández indicó que en la demanda se solicitó la consignación de la renta y no se ha dispuesto sobre ello. Sus representados están en disposición de pagar lo que les corresponde.

El señor Rivera solicitó el acceso a su propiedad.

El licenciado Chávez señaló que el pago debió haberse consignado en o antes de la vista de hoy y no debe ser considerada como una exclusión. Además, sentará en la silla de los testigos a la señora Bracken como parte de su prueba.

Por su parte, el licenciado Hernández indicó que sin la autorización de un tribunal, no se puede consignar un dinero.

El Tribunal dispondrá de ese planteamiento en el día de hoy.

Se señaló la **Continuación de Vista** para el **3 de julio de 2025** a la **1:30 p.m.** y como **fecha alterna** el **7 de agosto de 2025** a la **1:30 p.m.** de surgir algún cierre del tribunal.

El licenciado Chávez solicitó que la demandante limpie la propiedad para poder ser demostrada a otras personas.

El Tribunal le notifica a la parte demandante que se le de mantenimiento a la propiedad toda vez que los demandados tienen interés en mostrarla a prospectivos compradores. Instruyó a las partes que toda comunicación se lleve a cabo a través de abogados. Aclaró que aún no se ha hecho ninguna determinación en cuanto a desahucio ni en el resto de las alegaciones de la demanda.[11]

**Ese mismo día**, el TPI emitió una *Resolución Interlocutoria*,[12] y en lo pertinente, determinó lo siguiente:

Comenzada en el día de hoy la Vista de Desahucio en el caso **AB2025CV00039** consolidado con el presente, planteó la parte demandante, los señores Venza & Dillon Bracken y la sociedad legal de gananciales por ellos compuesta, por medio de su representante legal Gerardo J. Hernández, que interesaban ejercer su opción de renovar el contrato de alquiler con opción a compra habido con los demandados Aureo E. Rivera & Myrta N. Vázquez y la sociedad legal de gananciales habida entre estos, contrato con fecha del 16 de febrero de 2024 (Lease and Option to Buy Agreement). Para ello, y en vista de los litigios pendientes, interesan consignar en el Tribunal las sumas requeridas por dicho contrato para su continuidad, para lo que solicitaron la anuencia del Tribunal.

Dicho esto, el Tribunal autoriza a los señores Venza & Dillon Bracken a depositar en el Tribunal la cantidad de $31,000.00 correspondientes a: **(1)** $20,000.00 por concepto extender su opción a compra por la cantidad de $825,000.00, compra que deberá formalizarse en o antes de la expiración de la opción, o sea, antes del 28 de febrero de 2026; y **(2)**

---

[11] *Íd.*
[12] Emitida y Notificada el **10 de abril de 2025**. Entrada Núm. 38 del caso *CG2025CV00598* en SUMAC.

$11,000.00 correspondientes a los pago[s] de renta de los meses de febrero ($3,000.00), marzo y abril 2025 ($4,000.00 c.u.).

El dinero correspondiente a la opción a compra permanecerá consignado en el Tribunal hasta que no se disponga de otra forma. El dinero correspondiente a las rentas podrán ser retirados por los señores Aureo E. Rivera & Myrta N. Vázquez toda vez que los inquilinos continúan ocupando la propiedad.

Se les exige a los señores Venza & Dillon Bracken mantener la propiedad en estado de limpieza y recogido pues los dueños la estarán mostrando a prospectos compradores, a lo que los señores Bracken se allanaron, siempre y cuando les notifiquen la visita con al menos una semana de antelación.

Se le apercibe a las partes que toda comunicación entre ellos deberá llevarse a cabo a través de sus representantes legales.[13]

El **3 de julio de 2025**, continuó la vista.[14] De la *Minuta,* surge lo siguiente:

[D]urante el contrainterrogatorio, a solicitud del licenciado Hernández y sin reparo del licenciado Chávez se marcó la siguiente prueba como exhibits de la parte demandada que obran en la entrada 29 de SUMAC. (Bracken).
   • Exhibit 1 ddos: (Ident. 5) Correo electrónico del 27 de agosto de 2024.
   • Exhibit 2 ddos: (Ident. 6) Correo electrónico del 10 de agosto de 2024.
   • Exhibit 3 ddos: (Ident. 9) Correo electrónico del 25 de octubre de 2024.
   • Exhibit 4 ddos: (Ident. 10) Respuesta de A. Rivera con fecha del 25 de octubre de 2024
   • Exhibit 5 ddos: (Ident. 19) Carta del 19 de diciembre de 2024.
   • Exhibit 6 ddos: (Ident. 23) Correo electrónico del 17 de diciembre de 2024.
   • Exhibit 7 ddos: (Iden. 27) Correo electrónico de 11 de enero de 2025.
      Se marcó como Exhibit 6 estipulado la Ident. 23 de la entrada 29 de SUMAC, correo electrónico del 17 de diciembre de 2024.
      A las 4:22 p.m. el Tribunal decretó un receso para continuar con el contrainterrogatorio del señor Rivera el 7 de agosto de 2025 comenzando a las 10:30 a.m. y el día 28 de octubre de 2025 desde las 9:00 a.m.
      El licenciado Chávez indicó que utilizará el testimonio de la señora Bracken.
      Sobre el asunto pericial, y sin reparo de los representantes legales, el Tribunal autorizó una extensión de 10 días para presentar la evidencia pericial.[15]

Finalmente, el **12 de agosto de 2025**, el TPI dictó una **Sentencia de Desestimación** —en el caso de desahucio

---

[13] *Íd.*
[14] Véase, *Minuta* de la vista celebrada el **3 de julio de 2025** notificada el **10 de julio de 2025**. Entrada Núm. 79 del caso *CG2025CV00598* en SUMAC.
[15] *Íd.*

**AB2025CV00039**—,[16] en la cual hizo las siguientes determinaciones

de hechos:

1. El día 16 de febrero de 2024, el señor Aureo Rivera y la señora Venza Bracken suscribieron ante Notario un Contrato de Arrendamiento con Opción a Compra en el idioma inglés titulado *"Lease and Option to Buy Agreement"* sobre predio de terreno propiedad de los demandantes en el caso de Desahucio, a saber, don Aureo Rivera y doña Myrta Vázquez, de aproximadamente dos cuerdas de terreno en el Barrio Sonadora de Aguas Buenas, el cual contiene aproximadamente 9 estructuras de distintas dimensiones y destinadas a distintos usos.

2. La Propiedad sería destinada por los demandados Venza & Dillon Bracken a operaciones comerciales/turísticas de tipo *Bed & Breakfast* y/o *AirBNB*.

3. Sobre el **Término del Contrato**, este provee: "The term of this Lease with an option to purchase shall be twelve months commencing on March 1, 2024 and ending on February 28, 2025. As a condition for entering the Lease, Tenant shall pay the Landlord a $20,000.00 nonrefundable option fee at signing. Landlord hereby grants Tenant an option for a 12 month extension of the Lease term. Shall Tenant exercise said option, the same shall commence on March 1, 2025 and end on February 28, 2026. As a condition for exercising the extension option Tenant shall pay the Landlord another $20,000.00 as a nonrefundable option fee. **Tenant shall give Landlord notice of its intention to exercise any extension option and pay any applicable option fee at least one month in advance of the commencement of any extension, or the option will expire automatically**, and therefore be considered null and void."

4. Sobre los **cánones de arrendamiento** del Contrato, este provee: "The first 12 months rent for the demised premises shall be payable monthly in advance in equal installments of $3,000.00 each. If Tenant exercises the extension option the second 12 months rent for the demised premises shall be payable monthly in advance in equal installments of $4,000.00 each."

5. Sobre los permisos requeridos para el uso comercial interesado por los demandados, el Contrato provee: "Tenant shall **forthwith** obtain a use permit for the demised premises…" (Énfasis suplido.)

6. Sobre la obligación de **mantenimiento** de la Propiedad impuesta a la arrendataria, el Contrato dispone: **"Tenant shall keep the grounds adjacent to the demised premises, and the exterior, interior and doors and windows of the demises premises clean and in good order, condition, and repair as**

---

[16] Notificada el 13 de agosto de 2025. Entrada Núm. 18 del caso *AB2025CV00039* en SUMAC.

**when delivered to Tenant**, excepting ordinary wear and tear, damage by force majeure or damage resulting from Landlord's negligence and Landlord shall maintain the roof and all structural parts of the demised premises, except for repairs necessitated by Tenant's negligence, within a reasonable time (in no event later than 30 days after Tenant has demanded in writing that Landlord perform such work) and, **if Landlord fails to so perform this work, then Tenant may, at its option, perform such work and offset the cost of such work, and the cost of any other work necessitated by Landlord's failure to timely perform against the rent."** (Énfasis suplido.)

7. Sobre los eventos de **incumplimiento** ("default") de la arrendataria, el Contrato dispone: "The following shall be considered events of default hereunder: a) **non-payment by Tenant of any installment of the stipulated rent or additional rent within 10 days after the rent installment is due. Non-compliance by Tenant with any of the terms, conditions or covenants of this Lease, except for non-payment of rent, after written notice of such non-compliance had been given to Tenant and the same has not been corrected within 30 days thereafter**." (Énfasis suplido.)

8. "In the case that Tenant is declared in default by the Landlord in the Lease agreement and such default shall continue for 30 days after notice of such default to Tenant from Landlord, then Landlord may, at its option, determine that the option to purchase has expired and/or will be considered null and void."

9. Sobre las **notificaciones** relativas al Contrato, el mismo dispone que: "**All notices, demands, and communications hereunder shall be made in writing and sent by registered mail**, and if intended for Landlord shall be addressed to Aureo E. Rivera, Urb. Quintas de Dorado, Boulevard H57, Dorado, PR 00646 or such address as may be requested by Landlord in writing; and **if intended for Tenant, shall be addressed to: 250 Ponce de León Ave., suite 301 PMB 0104, San Juan 00902 PR and Lcdo. Rafael A. Ojeda Diez, PO Box 9023392-3392, San Juan, PR**."

10. En las vistas evidenciarias celebradas para auscultar la procedencia de la causa de acción de desahucio no [se] desfiló evidencia alguna de que este requisito de notificación escrita al Licenciado Ojeda Diez de las notificaciones a la arrendataria se hubiese variado de forma alguna.

11. El 14 de noviembre de 2024 el señor Aureo Rivera visitó la Propiedad e inspeccionó la misma y la encontró sucia y falta de mantenimiento.

12. El día 15 de noviembre de 2024, el arrendador Aureo Rivera le dirigió un correo electrónico a la arrendataria Venza Bracken, el cual lee, inter alia: "During my visit I had the opportunity to inspect the property and am very dissatisfied by the condition it is in. **I hereby demand that you clean and maintain the demised**

**premises as is your responsibility under our Agreement or be declared in default if it has not been completed during the next 30 days following the date of this notification.** ... Finally, I will cut to the chase and let you know that in my opinion you are both eccentric persons with unconventional and strange views or behavior that, had I known, I would not have done business with you. It is very hard for me to comprehend or adapt to your whimsical ways. If you wish to continue doing business with me, I urge you to cut the crap, stop whining and complaining, get your act together and start making money hand over first. Stop being delusional about our agreement and try to adopt a positive attitude that can help you change your behavior toward me and have a change of heart that can renew our relationship into a win-win and fruitful for all involved." (Énfasis suplido.)

13. El correo electrónico del 15 de noviembre de 2024 del arrendador a la arrendataria fue enviado a su correo electrónico personal y copiado a su esposo Dillon Bracken y a los representantes legales de don Aureo. **En ningún momento fue notificado al Licenciado Ojeda Diez por escrito y correo registrado conforme requiere el Contrato**.

14. El correo electrónico del 15 de noviembre de 2024 del arrendador a la arrendataria **no constituyó una notificación de incumplimiento, conforme su propio contenido**, si no que requiere a la arrendataria dar mantenimiento a la Propiedad, en términos generales, en el plazo de 30 días, al cabo de los cuales, de no brindar dicho mantenimiento general, se le podría notificar el incumplimiento del Contrato.

15. El correo electrónico del 15 de noviembre de 2024 del arrendador a la arrendataria **no especificó qué mantenimiento era requerido a la Propiedad por el arrendador a la arrendataria**.

16. El 17 de diciembre de 2024 el arrendador, Aureo Rivera, pasó por el frente de la Propiedad en su vehículo de motor y observó la misma. No se bajó ni realizó inspección de la Propiedad. **De lo que pudo observar desde la calle concluyó que a la Propiedad no se le había dado el mantenimiento requerido en su correo electrónico a la arrendataria del 15 de noviembre de 2024.**

17. El 17 de diciembre de 2024 el arrendador, Aureo Rivera, envió un correo electrónico a la arrendataria, Venza Bracken, el cual lee, en sus porciones pertinentes: "In an email to you dated November 15, 2024, I demanded that you clean and maintain the leased property as required under Article Nine of the Lease and Option to Buy Agreement or be declared in default if it was not done within thirty days following the date of said notification. I passed by the leased property this morning and saw that you have not done so. ... non-compliance by the Tenant with any of the terms, conditions, or covenants of the Lease after written notice of such non-compliance has been given

to the Tenant and the same has not been corrected within thirty (30) days thereafter shall be considered a default event. Therefore, **I hereby declare you in default of the Lease and Option to Buy Agreement. … If by January 17, 2025, you have not cured the abovementioned default in such a way that it meets the standard set forth in Article Nine, in addition to any other remedy available to me, I will declare the option to buy expired and null and void.** … Finally, Article Three of the Agreement requires that you obtain a use permit for the leased property for the operation of tourism related activities. This will serve as a demand and notice to provide me with a copy of said use permit within the next 30 days. Thank you."

18. Cabe señalar que el intento de declaración de incumplimiento de Contrato arriba relacionado ("declaration of default") **tampoco fue notificado al Licenciado Ojeda Diez por escrito y correo registrado conforme requiere el Contrato**.

19. El 11 de enero de 2025, el señor Aureo Rivera declara a la señora Venza Bracken, mediante correo electrónico dirigido a ella, en incumplimiento del Contrato por impago del canon correspondiente al mes de enero de 2025, de la siguiente manera: "I hereby notify you that as of the date of this writing you are in default of the lease payment for the month of January, 2025." **Dicha comunicación no fue notificada por correo registrado al Lic. Ojeda Diez, conforme requiere el Contrato.**

20. El 13 de enero de 2025, el señor Aureo Rivera le requiere a la arrendataria Venza Bracken por correo electrónico, copia del permiso único para el uso comercial de la Propiedad.

21. El 21 de enero de 2025[,] el señor Rivera junto a su esposa, la señora Vázquez, visitaron e inspeccionaron la Propiedad y encontraron la misma sucia y falta de mantenimiento, en particular, el área de la piscina y gazebo. Tomaron fotos en dicha ocasión, las cuales fueron introducidas en evidencia y demostraban que la Propiedad estaba falta de limpieza y mantenimiento.

22. El 21 de enero de 2025[,] el área de la piscina y gazebo de la Propiedad se encontraban faltos de limpieza y mantenimiento.

23. El 22 de enero de 2025[,] a las 11:29 am[,] el Licenciado Raúl Rosado Toro, en nombre del arrendador, Aureo Rivera, le envía a la arrendataria[,] Venza Bracken[,] un correo electrónico, **dando por terminado el Contrato habido entre las partes.** Ofrece como fundamentos a dicha terminación: a) la falta de mantenimiento a la Propiedad observada desde el 15 de noviembre de 2024; y, b) el impago de la renta del mes de enero de 2025. **Esta comunicación tampoco fue notificada por correo**

**registrado al Lic. Ojeda Diez, conforme requiere el Contrato**.[17]

Ante ello, tribunal de instancia declaró *No Ha Lugar* la causa de acción de desahucio. Además, resolvió que:

> [e]stima la arrendataria es debidamente notificada de incumplimiento del Contrato en cuanto a proveerle mantenimiento y limpieza adecuada a la Propiedad, a satisfacción del arrendador. Tendrá 30 días para subsanar y evidenciar dicho su cumplimiento con su obligación de llevar a cabo una limpieza general de la Propiedad.
>
> El incumplimiento con el pago de los cánones de arrendamiento y opción de compra, ante su consignación en el Tribunal, son académicos.
>
> En cuanto al incumplimiento notificado por la falta de permiso de uso de la Propiedad, el Tribunal nada provee pues no desfiló evidencia alguna que, a la fecha, la arrendataria esté dando uso comercial a la misma.[18]

Luego, el **14 de agosto de 2025**, el **matrimonio Bracken** presentó la *Moción en Solicitud de Honorarios de Abogado y Gastos de Litigio Conforme al Contrato de Arrendamiento, Sometiendo las Credenciales de Perito a Cargo de Reparación de Filtraciones y Reiterando Solicitud de Orden para Reparación de Filtraciones*.[19] En esta, solicitó que le ordenase al **matrimonio Rivera Vázquez** que pagara los honorarios y costas; además, de efectuar las reparaciones de las filtraciones en varias de las estructuras, conforme lo requiere el contrato de arrendamiento entre las partes.

En cumplimiento de orden,[20] el **25 de agosto de 2025** el **matrimonio Rivera Vázquez** sometió una moción en oposición a los honorarios de abogados y a otras solicitudes del **matrimonio Bracken**.[21]

Por otra parte, el TPI ordenó *"[l]a separación de los expedientes **AB2025CV00039** y **CG2025CV00598**, ya que la controversia dilucidada sobre el Desahucio en el **AB2025CV00039** ya fue*

---

[17] Entrada Núm. 18 del caso *AB2025CV00039* en SUMAC.
[18] *Íd.*
[19] Entrada Núm. 19 del caso *AB2025CV00039* en SUMAC.
[20] Mediante *Orden* emitida por el TPI el **15 de agosto de 2025** y notificada el mismo día. Entrada Núm. 20 del caso *AB2025CV00039* en SUMAC.
[21] Entrada Núm. 28 del caso *AB2025CV00039* en SUMAC.

*adjudicada, pero las controversias del expediente* **CG2025CV00598**

*se encuentran vigentes".*[22]

Respecto a las mociones presentadas por las partes, el **27 de agosto de 2025**,[23] el TPI expresó lo siguiente:

> Vista la *Moción en Oposición a Remedios Solicitados y en Cumplimiento de la Orden del Tribunal* de los demandantes y la *Moción Urgente Para que se nos Conceda Autorización Para Replicar a Oposición a Solicitud de Honorarios de Abogados y Reparación de Filtraciones* demandados, el Tribunal confiere a las partes el término de 30 días para de buena fe negociar y finiquitar los asuntos pendientes, entre ellos, el pago de honorarios de abogado de los señores Bracken y la reparación de las filtraciones de techo del área del Salón. **Vencido dicho término sin eventualidad alguna, el Tribunal estaría ordenando el pago de los honorarios de abogados incurridos por los señores Bracken y señalando Vista Evidenciaria sobre la procedencia de las reparaciones de filtraciones solicitada**.[24]

Sin alcanzar acuerdo alguno, el **16 de septiembre de 2025**, el **matrimonio Bracken** le solicitó al TPI el pago de los honorarios de abogados y gastos pactados, además de una vista para atender el asunto de la reparación del techo.[25]

Mediante *Orden a los Señores Rivera-Vázquez y Señalamiento,* dictada y notificada el **17 de septiembre de 2025**, [26] el TPI ordenó al el **matrimonio Rivera Vázquez** que en el término de 10 días le pagara a la contraparte la suma de $19,900.00 por concepto de honorarios de abogado y $2,038.90 por concepto de gastos incurridos. Además, le advirtió que, de no efectuar el pago en dicho término, ordenaría el retiro de los fondos consignados en el Tribunal. Adicionalmente, señaló la vista sobre el asunto del sellado de las filtraciones de techo para el 30 de octubre de 2025.

---

[22] Véase, *Orden* emitida por el TPI el **21 de agosto de 2025** y notificada el **26 de agosto de 2025**. Entrada Núm. 30 del caso *AB2025CV00039* en SUMAC.
[23] Véase, *Orden Sobre Mociones de las Partes* emitida y notificada el **27 de agosto de 2025**. Entrada Núm. 33 del caso *AB2025CV00039* en SUMAC.
[24] *Íd. Énfasis nuestro.*
[25] Entrada Núm. 37 del caso *AB2025CV00039* en SUMAC.
[26] Entrada Núm. 38 del caso *AB2025CV00039* en SUMAC.

Inconforme, el **matrimonio Rivera Vázquez** presentó el **24 de septiembre de 2025** una *Moción de Reconsideración*.[27] En lo pertinente, transcribimos las conclusiones presentadas:

CONCLUSIÓN

[E]n conclusión, la llamada Sentencia de Desestimación debe ser considerada en propiedad como una resolución interlocutoria, pues el propio Tribunal ordenó la separación de los casos al amparo de la Regla 38.2 de Procedimiento Civil. Al no haberse adjudicado la totalidad de las controversias entre las partes, y al no cumplirse con los requisitos de la Regla 42.3, la determinación notificada carece de los elementos que le conferirían el carácter de sentencia final. Ello significa que este Honorable Tribunal conserva jurisdicción para atender nuestra solicitud de reconsideración.

Además, conforme a la orden de este Honorable Tribunal del 27 de agosto de 2025, se nos había concedido un término hasta el 26 de septiembre de 2025 para negociar de buena fe y reaccionar a los asuntos pendientes. Sin embargo, la adjudicación cuestionada se dictó prematuramente, antes del vencimiento del término concedido y sin permitirnos la oportunidad de reaccionar a la moción acomodaticia presentada por los Bracken. Tal proceder, contrario a lo dispuesto por el propio Tribunal, no solo afecta el debido proceso, sino que también deja en evidencia que los Bracken han actuado en abierta falta de buena fe.

De igual modo, la determinación sobre la consignación de $20,000.00 no puede entenderse como un pago válido en propiedad. Pretender lo contrario forzaría la libertad de contratación y equivaldría a imponer a las partes un contrato que nunca fue perfeccionado conforme a sus términos ni aceptado voluntariamente. Aceptar esa consignación como sustituto del cumplimiento contractual significaría extender el contrato en contra de la voluntad del propietario y, en consecuencia, privar a Don Aureo del uso y disfrute de su propiedad de manera ilícita. Esa actuación es incompatible con los principios de autonomía de la voluntad y con la protección que la Ley 121-2019 dispensa a las personas de edad avanzada. En el mejor interés de la justicia, este Honorable Tribunal debe revisar su determinación y declarar improcedente la imposición de honorarios y la aceptación de la consignación en los términos reclamados.

POR TODO LO ANTERIOR, la parte compareciente solicita respetuosamente que este Honorable Tribunal tome en consideración los planteamientos aquí presentados por ser conforme a Derecho y en consecuencia.

- Tome conocimiento judicial de la oferta presentada al amparo de la Regla 35.1 de las de Procedimiento Civil.

- Reconsidere la determinación titulada como **Sentencia de Desestimación** constituye en realidad una resolución interlocutoria, toda vez que no se han adjudicado todas las controversias y que, conforme a las Reglas 38.2 y 42.3 de Procedimiento Civil, y a lo establecido en Torres Capeles v. Rivera Alejandro, *supra*[,] este Tribunal mantiene jurisdicción para atender nuestra moción de reconsideración.

---

[27] Entrada Núm. 39 del caso *AB2025CV00039* en SUMAC.

- Conforme a la ley del caso, haga las determinaciones sobre la segunda controversia con relación a la eficacia de la continuidad del contrato por la Sra. Bracken. Si las comunicaciones de Don Aureo no fueron eficaces, entonces bajo el mismo fundamento que uso el tribunal conforme a las cláusulas del contrato, tampoco la Sra. Bracken dio continuidad al contrato.

- Revoque la determinación notificada el 17 de septiembre de 2025 por haber sido prematura, en tanto no había vencido el término concedido por este Tribunal hasta el 26 de septiembre de 2025, y porque no se nos brindó la oportunidad de reaccionar a la moción acomodaticia de los Bracken, en contravención a lo ordenado.

- Disponga que la consignación de $20,000.00 no constituye un pago en propiedad ni puede servir para extender el contrato entre las partes, pues ello equivaldría a forzar la libertad de contratación y mantener al propietario privado de manera ilícita del uso y disfrute de su bien.

- Deniegue la solicitud de honorarios de abogado y gastos, por ser improcedente en derecho y en equidad, toda vez que no existe hallazgo de temeridad, las cantidades son arbitrarias e imposibles de verificar sin violentar el privilegio abogado–cliente, y además incluyen partidas que corresponden a gastos operacionales de la oficina legal, tales como mensajería, copias, peritos e intérpretes que no son honorarios de abogados ni son costas aplicables.

- Reserve la adjudicación de las controversias restantes hasta tanto se resuelvan de manera final todos los asuntos en el caso consolidado, incluyendo la reclamación sobre las filtraciones del techo y la evaluación de la prueba pericial.

- Fije vista para atender la controversia de las filtraciones, incluyendo la citación del señor José Mena y la obligación de la parte demandante de proveer su información de contacto.

- Conceda cualquier otro remedio en derecho y en equidad que estime justo y procedente.[28]

Pese a que la **parte peticionaria** requirió un término para expresarse sobre la solicitud de reconsideración,[29] el TPI dictó una *Resolución Sobre Reconsideración* el **25 de septiembre de 2025**.[30]

En lo pertinente, expresó:

> En cuanto a la Moción en Reconsideración de la parte demandante en el caso AB2025CV00039 de Desahucio, el Tribunal dispone, como sigue:
> **La misma ha sido radicada a destiempo, excedido el término de 15 días dispuesto por la Regla 47 de Procedimiento Civil**, ya que nuestra Sentencia adjudica la finalidad de la causa de acción de desahucio. **Sin embargo, en equidad, vamos a considerar la misma y hacer la[s] siguientes determinaciones de hecho adicionales:**

---

[28] Entrada Núm. 39 del caso *AB2025CV00039* en SUMAC.
[29] Entrada Núm. 40 del caso *AB2025CV00039* en SUMAC.
[30] Notificada el mismo día. Entrada Núm. 41 del caso *AB2025CV00039* en SUMAC.

> Doña Venza Bracken no renovó su Contrato de Arrendamiento con Opción a Compra con el Sr. Aureo Rivera conforme los términos del mismo. Sin embargo, el contrato de arrendamiento ha sido renovado mes a mes de facto en tanto la arrendataria consigna con el Tribunal sus cánones mensuales y el arrendador retira los mismos. No ha sido renovada la opción a compra conforme los términos del contrato y los fondos de la misma permanecen consignados. No Ha Lugar a la solicitud de Reconsideración sobre el pago de honorarios de abogado y costas del pleito pues proceden conforme derecho y conforme contrato.
>
> Se mantiene en pie el señalamiento pautado para el 30 de octubre próximo sobre la procedencia de las reparaciones de techo solicitadas por los señores Bracken. [sic].[31]

Ante ello, el **1 de octubre de 2025**, el **matrimonio Bracken** recurrió ante nos mediante el auto de *certiorari*,[32] y nos indicó la comisión de los siguientes dos (2) errores:

> **PRIMER ERROR:**
> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA E INCURRIÓ EN PREJUICIO, PARCIALIDAD Y CRASO ABUSO DE SU DISCRECIÓN AL DICTAR LA RESOLUCIÓN DEL 25 DE SEPTIEMBRE DE 2025, A PESAR DE QUE EL TÉRMINO JURISDICCIONAL PARA APELAR LA SENTENCIA OBJETO DE DICHA RESOLUCIÓN HABÍA VENCIDO Y, POR ENDE, EL TRIBUNAL DE PRIMERA INSTANCIA CARECÍA DE JURISDICCIÓN PARA HACER DETERMINACIONES ADICIONALES SOBRE LA MISMA.
>
> **SEGUNDO ERROR:**
> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR UNA RESOLUCIÓN MEDIANTE LA CUAL MODIFICÓ UNA SENTENCIA, SIN CONCEDER A UNA PARTE EL TÉRMINO DE VEINTE (20) DÍAS QUE DISPONE LA REGLA 8.4 DE LAS DE PROCEDIMIENTO CIVIL; AUN CUANDO DICHA PARTE ASÍ LO SOLICITÓ OPORTUNAMENTE.

Además, en esa misma fecha, el **matrimonio Bracken** acompañó su recurso de *certiorari* con una *Solicitud de Orden en Auxilio de Jurisdicción*,[33] en la cual solicitaba la paralización de los efectos de la *Resolución Sobre Reconsideración*.

El **2 de octubre de 2025**, acogimos el auxilio y emitimos una *RESOLUCIÓN* paralizando los procedimientos en el TPI.[34] Además, se le concedió al **matrimonio Rivera Vázquez** un término de diez (10) días para mostrar causa por la cual no debíamos de expedir el auto de *certiorari* solicitado. En cumplimiento de orden, el **14 de**

---

[31] Entrada Núm. 41 del caso *AB2025CV00039* en SUMAC. Énfasis nuestro.
[32] Entrada Núm. 1 del caso *TA2025CE00535* en SUMACTA.
[33] Entrada Núm. 2 del caso *TA2025CE00535* en SUMACTA.
[34] Notificada el mismo día.; Entrada Núm. 3 del caso *TA2025CE00535* en SUMACTA.

**octubre de 2025**, la **parte recurrida** presentó la *Oposición a Solicitud de Certiorari*.[35]

Con el beneficio de la comparecencia de las partes, el **15 de octubre de 2025**, dimos por sometido el caso para la atención del Panel.[36]

-II-

-A-

El auto de *certiorari* es un medio procesal de carácter discrecional, que a su vez, permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[37] Así, se entiende por discreción como el poder para decidir en una forma u otra; esto es, para escoger entre uno o varios cursos de acción.[38]

Por ello, la Regla 52.1 de Procedimiento Civil, delimita las instancias en que habremos de atender —*vía certiorari*— las resoluciones y órdenes emitidas por los tribunales de instancia:

> [E]l recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por **excepción** a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público **o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia**. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. [...].[39]

Bajo el carácter de discrecionalidad, la Regla 40 del Reglamento de este Tribunal de Apelaciones establece los siguientes

---

[35] Entrada Núm. 4 del caso *TA2025CE00535* en SUMACTA.

[36] Resolución emitida el **15 de octubre de 2025** notificada el **17 de octubre de 2025**. Entrada Núm. 7 del caso TA2025CE00535 en SUMACTA.

[37] *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 711 (2019).; *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337 – 338 (2012).

[38] *García v. Asociación,* 165 DPR 311, 321 (2005).

[39] Regla 52.1 de las Reglas de Procedimiento Civil 2009, 32 LPRA Ap. V., R. 52.1. *Énfasis nuestro.*

criterios para mostrar causa o para la expedición del auto de

*certiorari:*

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[40]

En consecuencia, el Tribunal Supremo de Puerto Rico ha

dispuesto que:

> [d]e ordinario, no se intervendrá con el ejercicio de discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.[41]

De manera, que si la actuación del foro recurrido no está

desprovista de base razonable —ni perjudica los derechos

sustanciales de las partes— deberá prevalecer el criterio del juez de

instancia a quien le corresponde la dirección del proceso.[42]

**-B-**

Referente a una moción de reconsideración y sus efectos

procesales,[43] la Regla 47 de Procedimiento Civil dispone que:

> La parte adversamente afectada por una orden o resolución del Tribunal de Primera Instancia podrá presentar, dentro del término de cumplimiento estricto de quince (15) días desde la fecha de la notificación de la orden o resolución, una moción de reconsideración de la orden o resolución.
>
> La parte adversamente afectada por una **sentencia** del Tribunal de Primera Instancia podrá presentar, dentro

---

[40] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62 – 63, 215 DPR __ (2025).
[41] *Zorniak Air Services v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992).; *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[42] *SLG Zapata- Rivera v. JF Montalvo*, 189 DPR 414, 434 – 435 (2013).
[43] Regla 47 de Procedimiento Civil, 32 LPRA Ap. V, R. 47.

del término **jurisdiccional** de quince (15) días desde la fecha de archivo en autos de copia de la notificación de la sentencia, una moción de reconsideración de la sentencia.

La moción de reconsideración debe exponer con suficiente particularidad y especificidad los hechos y el derecho que el promovente estima que deben reconsiderarse y fundarse en cuestiones sustanciales relacionadas con las determinaciones de hechos pertinentes o conclusiones de derecho materiales.

La moción de reconsideración que no cumpla con las especificidades de esta regla será declarada "sin lugar" y se entenderá que no ha interrumpido el término para recurrir.

Una vez presentada la moción de reconsideración quedarán interrumpidos los términos para recurrir en alzada para todas las partes. Estos términos comenzarán a correr nuevamente desde la fecha en que se archiva en autos copia de la notificación de la resolución resolviendo la moción de reconsideración.

La moción de reconsideración se notificará a las demás partes en el pleito dentro de los quince (15) días establecidos por esta regla para presentarla ante el tribunal de manera simultánea. El término para notificar será de cumplimiento estricto.[44]

En síntesis, una moción de reconsideración permite que la parte afectada por un dictamen judicial —*orden, resolución o sentencia*— pueda solicitar al Tribunal que considere nuevamente su decisión, antes de recurrir al Tribunal de Apelaciones.[45]

De optar por ello, la mera presentación oportuna de una moción de reconsideración —que cumpla con **todos** los requisitos dispuestos en la Regla antes esbozada—, tiene el efecto de **paralizar automáticamente** los términos concedidos por ley para recurrir en alzada, hasta tanto el TPI resuelva la solicitud.[46] Dichos términos comenzarán a transcurrir nuevamente, a partir de la fecha en que se archiva en autos copia de la notificación de la resolución resolviendo la moción de reconsideración.[47]

---

[44] *Íd. Énfasis nuestro.*

[45] *Morales y otros v. The Sheraton Corp.*, 191 DPR 1, 7 (2014) citando a *Constructora Estelar v. Aut. Edif. Púb.*, 183 DPR 1, 24 (2011); *Castro v. Sergio Estrada Auto Sales, Inc.*, 149 DPR 213, 217 (1999).

[46] *Marrero Rodríguez v. Colón Burgos*, 201 DPR 330, 337-338 (2018).; *Morales y otros v. The Sheraton Corp.*, *supra*, a las págs. 7-8.; *Rivera Marcucci v. Suiza Dairy*, 196 DPR 157, 167 (2016).

[47] *Marrero Rodríguez v. Colón Burgos*, *supra*, a las págs. 338-339 citando a *Plan Salud Unión v. Seaboard Sur. Co.*, 182 DPR 714, 719 (2011); *Insular Highway v. AII Co.*, 174 DPR 793, 805 (2008); *Lagares v. ELA*, 144 DPR 601, 613 (1997).; *Morales y otros v. The Sheraton Corp.*, *supra*.

En cambio, el efecto interruptor **no operará** si la moción de reconsideración no cumple con las especificidades dispuestas en la aludida Regla 47.[48] Si la moción no cumple con los requisitos consignados en la Regla 47, será declarada *sin lugar* **y se entenderá que no ha interrumpido los términos para acudir en alzada**.[49]

Respecto al término para presentar una moción de reconsideración, la aludida regla establece que solicitud tiene que ser sometida dentro del término de quince (15) días desde la fecha de la notificación de la orden, resolución o sentencia.[50] Si se trata de una **sentencia**, el término es de carácter **jurisdiccional**.[51]

A tono con lo antes dicho, sabemos que un término jurisdiccional —*contrario a un término de cumplimiento estricto*— es de naturaleza improrrogable.[52] Es decir, es *fatal, improrrogable e insubsanable,* rasgos que explican por qué no puede acortarse, como tampoco es susceptible de extenderse.[53] Ello, sin importar las consecuencias procesales que su expiración provoque.[54]

### -III-

En esencia, el **matrimonio Bracken** señaló que el TPI erró al emitir la ***Resolución Sobre Reconsideración*** recurrida del **25 de septiembre de 2025**, dado que el término jurisdiccional de 15 días, para atacar la **Sentencia de Desestimación** —en el caso de desahucio **AB2025CV00039**—,[55] había vencido, y el tribunal de instancia carecía de jurisdicción para realizar las determinaciones de hechos adicionales que hizo. Tiene razón.

---

[48] *Rivera Marcucci v. Suiza Dairy, supra.*; *Morales y otros v. The Sheraton Corp., supra,* a las págs. 8-9.
[49] *Marrero Rodríguez v. Colón Burgos, supra.*
[50] 32 LPRA Ap. V, R. 47.
[51] *Íd.*
[52] *De Jesús Vinas v. González Lugo,* 170 DPR 499, 508 (2007).; Véase, además; *Rosario Domínguez v. ELA,* 198 DPR 197, 208–209 (2017).
[53] *De Jesús Vinas v. González Lugo, supra,* citando a *Martínez, Inc. v. Abijoe Realty Corp.* 151 DPR 1, 7 (2000).
[54] *Rosario Domínguez v. ELA, supra,* a la pág. 208.
[55] Notificada el 13 de agosto de 2025. Entrada Núm. 18 del caso *AB2025CV00039* en SUMAC.

De entrada, la moción de reconsideración presentada por el **matrimonio Rivera Vázquez**, que entre otras peticiones, solicitó que el TPI hiciera determinaciones de hechos adicionales y modificara la **Sentencia de Desestimación**, fue presentada a **destiempo**, detalle que el tribunal de instancia reconoció al expresar que en **equidad** la consideraría, y así, realizó las siguientes determinaciones de hechos adicionales:

> [D]oña Venza Bracken no renovó su Contrato de Arrendamiento con Opción a Compra con el Sr. Aureo Rivera conforme los términos del mismo. Sin embargo, el contrato de arrendamiento ha sido renovado mes a mes de facto en tanto la arrendataria consigna con el Tribunal sus cánones mensuales y el arrendador retira los mismos. No ha sido renovada la opción a compra conforme los términos del contrato y los fondos de la misma permanecen consignados.[56]

Lo antes dicho se hizo **sin jurisdicción**, ya que la **Sentencia de Desestimación** en el caso núm. AB2025CV00039 —que puso finalidad a la acción de desahucio— fue notificada el **13 de agosto de 2025**,[57] y la *Moción de Reconsideración* se presentó el **24 de septiembre de 2025**,[58] cuando ya había **vencido** el término **jurisdiccional** de 15 días. Como esbozamos anteriormente, el plazo jurisdiccional es *fatal, improrrogable e insubsanable*, por lo cual, el TPI carecía de jurisdicción para atender la mencionada moción de reconsideración y realizar determinaciones adicionales que modificaron la referida **Sentencia de Desestimación**. En consecuencia, el error fue cometido.

En virtud de lo antes expuesto, se expide el auto de *certiorari* solicitado y procedemos a desestimar parcialmente la *Resolución en Reconsideración* emitida el 25 de septiembre de 2025.[59] En específico, se **desestiman** las determinaciones de hechos adicionales que intentó modificar la Sentencia de Desestimación sobre el caso del desahucio **por carecer de jurisdicción**. Así, se

---

[56] Véase, Entrada Núm. 41 del caso *AB2025CV00039* en SUMAC.
[57] Véase, Entrada Núm. 18 del caso *AB2025CV00039* en SUMAC.
[58] Entrada Núm. 39 del caso *AB2025CV00039* en SUMAC.
[59] Entrada Núm. 41 del caso *AB2025CV00039* en SUMAC.

confirma el resto de la determinación de *No Ha Lugar* a la reconsideración del pago de los honorarios de abogado y las costas.

**-IV-**

Por los fundamentos expresados, procedemos a **expedir** el auto de *certiorari* solicitado y **desestimamos parcialmente** la *Resolución Sobre Reconsideración* recurrida **por carecer de jurisdicción** al emitir las determinaciones de hechos adicionales a la *Sentencia de Desestimación* en el caso de desahucio; así, procedemos a confirmar el resto de las determinaciones dictadas en dicha resolución. También, se levanta la paralización y se ordena la continuación de los procesos, conforme al presente dictamen.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones